USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/29/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELIZABETH THOMAS,

                 Plaintiff,

-against-

NATIONAL RAILROAD PASSENGER CORP.,

                 Defendant.

---

NATIONAL RAILROAD PASSENGER CORP.,

                 Third-Party Plaintiff,

-against-

247 MAINTENANCE LLC,

                 Third-Party Defendant.

---

NATIONAL RAILROAD PASSENGER CORP.,

                 Third-Party Plaintiff,

-against-

365 MAINTENANCE LLC,

                 Third-Party Defendant.

22-CV-10225 (MMG)

**OPINION & ORDER**

---

MARGARET M. GARNETT, United States District Judge:

    Plaintiff Elizabeth Thomas initiated this action against Defendant and Third-Party Plaintiff National Railroad Passenger Corporation ("Amtrak") pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* to recover damages from an injury she sustained while working at Amtrak's Sunnyside Yard Facility in Queens, New York. Plaintiff and Amtrak have resolved all claims between them. Amtrak filed third-party complaints pursuant to Federal

1

Rule of Civil Procedure 14(a) against Third-Party Defendants 247 Maintenance LLC ("247 Maintenance") and 365 Maintenance LLC ("365 Maintenance") alleging breach of contract and common law indemnification in connection with Plaintiff's injury. Presently before the Court are Amtrak, 247 Maintenance, and 365 Maintenance's cross-motions for summary judgment on Amtrak's Third-Party Complaints. For the reasons set forth below, Amtrak's motion is GRANTED in part and DENIED in part; 247 Maintenance's motion is DENIED; and 365 Maintenance's motion is GRANTED.

## FACTS & PROCEDURAL HISTORY[1]

Plaintiff worked as a Pipefitter for Amtrak at its Sunnyside Yard Mechanical Facility. Dkt. No. 1 ¶ 3; J56.1 ¶ 9. On February 7, 2021, at approximately 10:06 pm, Plaintiff exited the Amtrak locker room, which was located in a trailer on Amtrak's property. Dkt. No. 1 ¶ 10; J56.1 ¶¶ 9–10. After walking down the steps of the trailer, Plaintiff "took two steps forward and slipped and fell to the ground." J56.1 ¶ 10. The fall resulted in injuries to Plaintiff's right leg and back. Dkt. No. 1 ¶ 10. Plaintiff attributes her fall to icy conditions outside of the trailer. J56.1 ¶ 11. Plaintiff alleges that Amtrak negligently failed to provide her with a safe workplace, warn her of slippery conditions, and clear ice and snow from the premises. *Id.* ¶ 1. In September 2024, Plaintiff settled her claims with Amtrak, agreeing to release all claims in exchange for a monetary payment of $435,000. *See* Dkt. No. 116 at 8–9.

Shortly after Plaintiff filed suit, Amtrak filed third-party complaints against Third-Party Defendants 365 Maintenance and 247 Maintenance. *See* Dkt. Nos. 11, 23, 52. 365 Maintenance and 247 Maintenance are companies that handle snow removal services, *see* Dkt. No. 121-13

---

[1] The relevant facts are taken from the parties' Joint Statement of Undisputed Facts ("J56.1"), Dkt. No. 118, the Complaint, and admitted facts in the Third-Party Defendants' responses to Amtrak's Rule 56.1 statement.

¶¶ 47–48, and are both owned by Anthony Farina, *see id.* ¶ 44. Amtrak contracted with 365 Maintenance for snow removal services in October 2015 for the 2015–2016 winter season. Dkt. No. 122-1 ¶¶ 9, 11. Amtrak again contracted with 365 Maintenance for snow removal services in November 2017 and December 2018 for the winter seasons immediately following each contract. *Id.* ¶¶ 28, 31. In December 2020, Amtrak issued a purchase order (the "December 2020 Purchase Order" or the "Purchase Order") to 247 Maintenance for snow removal services for the upcoming winter season, running from December 2020 to April 30, 2021. *Id.* ¶ 35–36; *see* Dkt. No. 115-15. The December 2020 Purchase Order was in full force and effect at the time of Plaintiff's accident. Dkt. No. 122-1 ¶ 38. The Purchase Order included a section titled "terms and conditions of purchase" that states "[u]nless otherwise specified, the terms referenced on National Railroad Passenger Corporation (Amtrak) Form #69 . . . shall apply to all Amtrak Purchase Order transactions. Contractor's acceptance of or performance under the Purchase Order will constitute acceptance of these terms." Dkt. No. 115-15 at 3. Amtrak Form #69 (the "Conditions of Purchase"), in turn, contains an indemnification provision. Dkt. No. 121-3 ¶ 23.

In its Third-Party Complaint, Amtrak claims that both 247 Maintenance and 365 Maintenance were bound by the December 2020 Purchase Order and breached that agreement by failing keep the surfaces clear of ice; failing to defend and indemnify Amtrak; and failing to maintain insurance contracts. *See* Dkt. No. 116 at 3–4. On January 6, 2025, Amtrak, 247 Maintenance, and 365 Maintenance all moved for summary judgment on Amtrak's Third-Party Complaints. *See* Dkt. Nos. 112–116.

## DISCUSSION

### I. LEGAL STANDARD

"Summary judgment is appropriate where the admissible evidence and the pleadings

demonstrate 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Williams v. N.Y.C. Dep't of Health & Mental Hygiene*, 299 F. Supp. 3d 418, 424 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 56(a)).[2] A fact is material if it could "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the materials that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). The standard is the same for cross-motions for summary judgment: the court must consider each motion independently of the other and, when evaluating each, must consider the facts in the light most favorable to the non-moving party. *See Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## II. AMTRAK'S BREACH OF CONTRACT CLAIMS AGAINST 247 MAINTENANCE

Amtrak seeks summary judgment on its breach of contract claims against 247 Maintenance for failing to comply with the terms of the December 2020 Purchase Order; 247 Maintenance cross-moves for summary judgment dismissing Amtrak's claims against it for breach. The parties disagree on which jurisdiction's law—New York or the District of Columbia ("D.C.")—should govern this dispute, as discussed further below. But under either New York or

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

D.C. law, to succeed on a breach of contract claim, a party must show: "(1) the existence of a contract between the plaintiff and the defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by the defendant; and (4) damages to the plaintiff caused by the defendant's breach." *Trump v. Simon & Schuster, Inc.*, No. 23-CV-06883 (PGG), 2025 WL 2017888, at *27 (S.D.N.Y. July 18, 2025) (quoting *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)).

The parties do not substantively dispute the first and second elements of Amtrak's breach of contract claim: Amtrak and 247 Maintenance agree that the December 2020 Purchase Order is a contract that was in effect at the time of Plaintiff's accident, and that Amtrak performed its end of the contract. Dkt. No. 122-1 ¶ 38.[3] As to the third element, the parties dispute whether 247 Maintenance breached its obligations under the December 2020 Purchase Order by failing to defend and indemnify Amtrak for Plaintiff's injuries.[4] This dispute hinges on three interconnected issues: (i) whether the December 2020 Purchase Order incorporates Amtrak's Conditions of Purchase by reference, (ii) if so, whether the indemnification provision in the Conditions of Purchase binds 247 Maintenance, and (iii) whether the fall that is the subject of this litigation is covered by the indemnification agreement in the Conditions of Purchase. As discussed further below, the first two issues can be resolved in Amtrak's favor on summary judgment, but material factual disputes preclude summary judgment for either party on the third issue.

---

[3] 247 Maintenance argues that the parties did not have a valid enforceable contract at the time of the accident. *See* Dkt. No. 121-2 at 6. That argument is belied by 247 Maintenance's concession that the parties had an agreement for snow removal services in place at the time of the accident. *See id.* at 7.

[4] Amtrak's Third-Party Complaint against 247 Maintenance also alleges that 247 Maintenance breached the Purchase Order by failing to obtain prior approval to hire subcontractor Alex Fuentes. *See* Dkt. No. 52 ¶ 9. The Court does not address that allegation because it was not raised in Amtrak's motions for summary judgment.

### A. New York Law Applies to the December 2020 Purchase Order

To interpret the December 2020 Purchase Order, the Court must first determine which forum's law to apply to interpret the agreement.[5] This case arises under the Court's federal question jurisdiction. *See* Dkt. No. 1 ¶ 1; Dkt. No. 11 ¶ 2; *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 162 F. Supp. 3d 145, 150 n.3 (E.D.N.Y. 2016) ("[C]ases brought against federally chartered corporations pursuant to 28 U.S.C. § 1349 are considered to 'arise under federal law for purposes of general statutory federal-question jurisdiction'") (quoting *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 251 (1992)); *Id.* ("Amtrak is correct that the law is well-settled that federal courts have federal question jurisdiction over suits by or against Amtrak under 28 U.S.C. § 1331") (quoting *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 924 (S.D.N.Y. 1995)). The choice-of-law rule that applies where, as here, the claims at issue are state law claims brought pursuant to the Court's federal question jurisdiction, is not settled. *See Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 287 n.2 (S.D.N.Y. 2025) ("[I]n the narrower category of cases in which the underlying dispute between the parties arises under federal law, such that a federal court may exercise federal question jurisdiction pursuant to 28 U.S.C. § 1331, it is not obvious which choice-of-law rules the court is to apply."). The Second Circuit has stated that where jurisdiction "is predicated on a federal question . . . the relevant forum is federal district court – where federal common law applies." *DarkPulse, Inc. v. Crown Bridge Partners LLC*, No. 23-7550-CV, 2024 WL 3872725, at *2 (2d Cir. Aug. 19, 2024).

---

[5] Amtrak argues that the laws of the District of Columbia apply to this case based on a choice of law provision incorporated by reference into the December 2020 Purchase Order. *See* Dkt. No. 116 at 10. But "[a]pplying [a] choice-of-law clause to resolve [a] contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). Thus, the Court must interpret the Purchase Order under the relevant forum's choice of law rules. *See Fin. One. Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005).

6

However, it has also strongly cautioned against the application of federal common law in light of the Supreme Court's holding in *Atherton v. F.D.I.C.*, 519 U.S. 213 (1997). *See, e.g.*, *In re Coudert Bros. LLP*, 673 F.3d 180, 188 (2d Cir. 2012) (explaining that "federal choice of law rules must be regarded as a species of federal common law" that the court is "loath to use" because "federal common law should be applied only where there is a significant conflict between some federal policy or interest and the use of state law."). Additionally, other federal courts have indicated that the conflict of law rules of the forum state—here, New York—should apply. *See Pilon*, 769 F. Supp. 3d at 287 n.2 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 862 (9th Cir. 2022)).

The Court need not resolve the ambiguity over which conflict-of-law analysis to apply because under both New York and federal common law choice-of-law principles, New York law governs interpretation of the December 2020 contract as to the questions that are relevant to this litigation. The choice-of-law analysis under federal common law is guided by Section 188 of the Restatement (Second) of Conflict of Laws. *See Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007) ("[W]hen conducting a federal common law choice-of-law analysis, absent guidance from Congress, [courts] may consult the Restatement (Second) of Conflict of Laws."); *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 384 (2d Cir. 2024) ("[Section] 188 of the Restatement applies when, as here, the parties have not preemptively designated a choice of applicable law"), *cert. denied*, 145 S. Ct. 279 (2024).

"Under Section 188, courts consider which jurisdiction has the most significant relationship to the transaction and the parties," *Commerzbank* AG, 100 F.4th 362, 384, by assessing "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e],

residence, nationality, place of incorporation and place of business of the parties," Restatement (Second) of Conflict of Laws § 188(2). Similarly, "[u]nder New York choice of law principles . . . the choice of law for contract and quasi-contract claims is determined by a 'center of gravity' analysis. *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 238 (S.D.N.Y. 2013) (quoting *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383 (2d Cir. 2006)). The factors relevant to determining the center of gravity mirror the factors listed in Section 188 of the Restatement. *See, e.g., Longo v. KeyBank Nat'l Ass'n*, 357 F. Supp. 3d 263, 270 (S.D.N.Y. 2019) ("To determine the center of gravity, courts generally consider 'the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties.'") (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (1994)); *cf Granite Ridge Energy, LLC v. Allianz Glob. Risk U.S. Ins. Co.*, 979 F. Supp. 2d 385, 392 (S.D.N.Y. 2013) ("New York courts routinely refer to the Second Restatement as authority for conflict-of-laws principles governing contracts.").

Applying the relevant factors under both federal common law and New York choice-of-law principles to the December 2020 Purchase Order counsels in favor of applying New York law. New York is the place of performance and the location of the subject matter of the Purchase Order: The Order concerns snow removal for Amtrak's Sunnyside Yard facility in Queens, New York, and the snow removal services contemplated by the agreement were to be performed at the Sunnyside Yard facility. *See* Dkt. No. 124-15 at 2. Additionally, 247 Maintenance, one of the two parties to the contract, is based in New York. *See id.* As to the other Section 188 factors, the record is not clear as to the place of negotiation or contracting. Accordingly, the Court's interpretation of the December 2020 Purchase Order is guided by New York law.

## B. The December 2020 Purchase Order Incorporates Amtrak's Conditions of Purchase by Reference

The parties dispute whether the December 2020 Purchase Order incorporates Amtrak's Conditions of Purchase by reference such that its terms apply to 247 Maintenance. *See, e.g.* Dkt. No. 112-14 at 6–7. A review of the Purchase Order confirms that it does. To determine whether a document has been incorporated by reference into a contract, courts consider two factors: "(1) whether the allegedly incorporated document is expressly identified and so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt, and (2) whether the language incorporating the document clearly communicates that the purpose of the reference is to incorporate the referenced material into the contract." *Silver v. Nissan-Infiniti LT, LLC*, 724 F. Supp. 3d 217, 223 (S.D.N.Y. 2024) (quoting *Volt Elec. NYC Corp. v. A.M.E., Inc.*, 586 F. Supp. 3d 262, 279 (S.D.N.Y. 2022)), *reconsideration denied*, No. 23-CV-1019 (AT), 2024 WL 2055252 (S.D.N.Y. May 7, 2024).

Both factors are satisfied as to Amtrak's Condition of Purchase. First, the December 2020 Purchase Order expressly and clearly identifies the Conditions of Purchase as part of the document; it describes the Conditions of Purchase as "National Railroad Passenger Corporation (Amtrak) Form #69," which matches the title on the document itself. *See* Dkt. No. 115-11 (Document titled "National Railroad Passenger Corporation (Amtrak) Conditions of Purchase" with the label "NRPC Form #69" at the bottom of each page). Additionally, the contract has a link to the website where the Conditions of Purchase are located. Dkt. No. 115-15 at 3. Courts in this circuit have repeatedly found that a provision in a written contract such as this one that links to an online document incorporates the linked document by reference. *See Mill-Run Tours, Inc. v. Windstream Servs. LLC*, No. 16-CV-07052 (ER), 2017 WL 2930932, at *1, *3 (S.D.N.Y. July 7, 2017) (commenting that "[t]he Service Agreement, on its first page, expressly

9

incorporated by reference the Standard Terms and Conditions of Service ("Standard Terms") on [Defendant's] website, and provides the website address with a direct link" and recognizing that the agreement incorporated the Standard Terms); *Am. Specialty Lab, LLC v. GenTech Sci., Inc.*, No. 17-CV-1187S, 2020 WL 5367061, at *4 (W.D.N.Y. Sept. 8, 2020) ("Reference to a website containing terms and conditions can provide proper identification"); *See also Wendrovsky v. Chase Paymentech*, No. 12-CV-00704 (AJN), 2012 WL 13042574, at *3 (S.D.N.Y. Oct. 15, 2012) (citing *One Beacon Ins. Co. v. Crowley Marine Serv. Inc.*, 648 F.3d 258, 267 (5th Cir. 2011) for the proposition that "when a contract stated that it was to be construed 'IN ACCORDANCE WITH THE PURCHASE ORDER TERMS & CONDITIONS ON' a specified website, those terms and conditions were validly incorporated").

The second factor is also satisfied because the Purchase Order makes clear that Amtrak's Conditions of Purchase are referenced for the purpose of incorporating them into the agreement. The order is referenced in a section titled "TERMS AND CONDITIONS OF PURCHASE" in a large, bolded font. The text of that section states "[u]nless otherwise specified, the terms referenced on National Railroad Passenger Corporation (Amtrak) Form #69 . . . shall apply to all Amtrak Purchase Order transactions." *See* Dkt. No. 115-15 at 3. Furthermore, the section states, "Contractor's acceptance of or performance under the Purchase Order will constitute acceptance of these terms." *Id.* Taken together, these statements clearly "communicate[] that the purpose of the reference is to incorporate the referenced material into the contract." *Silver*, 724 F. Supp. 3d at 223. Accordingly, Amtrak's Conditions of Purchase are incorporated into the December 2020 Purchase Order.[6]

---

[6] The Purchase Order also includes a flow-down provision to the terms of a prior purchase order. *See* Dkt. No. 115-15 at 2. Amtrak argues that this provision also incorporated Amtrak's Conditions of Purchase by reference because the prior order incorporated the Conditions of Purchase. *See* Dkt. No. 116

### C. The Indemnification Provision is Enforceable Against 247 Maintenance

Because the Purchase Order incorporates Amtrak's Conditions of Purchase by reference, the terms of the Conditions of Purchase, including its indemnification provision, apply to the Purchase Order. *See Sinavsky v. NBCUniversal Media, LLC*, No. 20-CV-09175 (JPC), 2021 WL 4151013, at *4 (S.D.N.Y. Sept. 13, 2021) ("If a contract refers to and sufficiently describes another document, that document may be made a part of the contract as if incorporated into the body of it."). 247 Maintenance argues that the indemnification provision should not be enforced against it because it "would be against public policy to enforce a contractual indemnification provision that was never formally entered into between the parties." Dkt. No. 121-2 at 7. But whether 247 Maintenance signed Amtrak's Conditions of Purchase is of no moment; as the Second Circuit has explained, "[p]arties to a contract are plainly free to incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other agreements to which they are not a party." *Ronan Assocs. v. Local 94-94A-94B, Int'l Union of Operating Eng'rs*, 24 F.3d 447, 449 (2d Cir. 1994); *see also Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97 (2d Cir. 2002) ("[W]e have specifically found that parties were bound to arbitrate under arbitration clauses they never signed, where those clauses were contained in other documents that were incorporated by reference."). By incorporating Amtrak's Conditions of Purchase into the December 2020 Purchase Order, the parties bound themselves to its terms, including the indemnification clause, regardless of whether 247 Maintenance separately agreed to the Conditions of Purchase.

---

at 11. The Court need not reach that issue because, as discussed above, the December 2020 Purchase Order itself expressly incorporated Amtrak's Conditions of Purchase by reference.

11

### D. Factual Disputes Over the Application of the Indemnification Provision Preclude Summary Judgment for Either Party on Amtrak's Breach of Contract Claims for Indemnification

Although the indemnification provision applies to 247 Maintenance, that alone is not sufficient to grant summary judgment to Amtrak. The record submitted in this case raises a genuine dispute of material fact as to whether the accident at issue falls within the scope of the indemnification clause. The indemnification provision states:

> Contractor agrees to defend, indemnify and hold harmless Amtrak, its officers, directors, employees, agents, successors, assigns and subsidiaries (collectively "Indemnified Parties"), from and against any claims, losses, liabilities (including without limitation environmental liabilities), penalties, fines, causes of action, suits, costs and expenses incidental thereto, (including costs of defense and attorneys' fees) (collectively "Claims"), which any of the Indemnified Parties may hereafter incur, be responsible for or pay as a result of . . . injury or death of any person . . . **arising out of or in any degree directly or indirectly caused by or resulting from the Supplies or Services, or from activities of or work performed by Contractor, Contractor Agents, or any other person acting for or with the permission of Contractor under the Order, or as a result of Contractor's failure to perform its obligations in compliance with this Order**.

Dkt. No. 115-11 at 6 (emphasis added). Thus, to be subject to the indemnification clause, a claim must "arise out of" or be "directly or indirectly caused by" the contractor's activities or work under the Purchase Order, or result from the contractor's "failure to perform its obligations." *Id.*

Both Amtrak and 247 Maintenance's motions for summary judgment must be denied as to Amtrak's breach of contract claim based on indemnification because, regardless of who is the movant, there is a genuine dispute as to whether Plaintiff's injuries "arise out of" or were "directly or indirectly caused by" 247 Maintenance's work, or failure to perform that work, under the December 2020 Purchase Order. *Id.* Amtrak argues that Plaintiff's injuries arise out 247 Maitenance's failure to perform its contractual obligation to "provide road salt and ice melt as required to maintain all areas

12

clear of ice." Dkt. No. 116 at 12. 247 Maintenance on the other hand, argues that Plaintiff's injuries do not arise out of a breach of its obligations under the Purchase Order because: (i) the record demonstrates that it properly salted the area in which the accident took place; (ii) the accident was caused by a "melt and re-freeze event" in which the temperature dropped after 247 Maintenance performed services and created black ice; and (iii) addressing the melt and re-freeze conditions would have required Amtrak to make a follow-up call to 247 Maintenance, which it did not do. *See* Dkt. No. 114-12 at 8

The record evidence creates a genuine dispute of material fact over the cause of the accident and, as a result, whether 247 Maintenance breached the indemnification clause. It is undisputed that 247 Maintenance billed Amtrak for snow removal services on February 7, 2021, for the hours of 6 a.m. to 6 p.m. *See* Dkt. No. 115-17. It is also undisputed that Plaintiff's accident took place on February 7, 2021 at approximately 10:06 p.m. and that Plaintiff slipped and fell on pavement on Amtrak's property. *See* J56.1 ¶ 10. The remaining facts surrounding the accident are less clear. On the one hand, Plaintiff testified that there was no salt on the pavement in the area in which she fell. *See* Dkt. No. 115-1 at 76:2–9. She further testified that, after her fall, Amtrak employee Anthony Khellawan brought workers to the accident scene to apply salt. *Id.* Based on these events, a reasonable jury could conclude that Plaintiff's accident was caused by 247 Maintenance's performance of the Purchase Agreement because it failed to adequately salt the premises and thus, that Plaintiff's injury was caused by the way 247 Maintenance performed the work, or its failure to perform the work, such that the indemnification provision applies.

On the other hand, a reasonable jury could also interpret the record to conclude that Plaintiff's accident was not caused by 247 Maintenance's work or failure to perform that work. First, the accident report for the incident indicates that the area in which the accident took place was salted. Dkt. No. 115-4. The report states that "the area was salted and temperature dropped creating black ice." *Id.* Amtrak employee Anthony Khellawan, who prepared the report, testified that he could not recall whether he saw salt or ice on the date of the incident, but that the statement was based on his observation of the area. *See* Dkt. No. 115-5 at 46:9–11, 56:14–57:2. The record is not clear as to the precise timing of Khellawan's observation. Thus, a reasonable jury could also conclude that the 247 Maintenance did salt the area in which Plaintiff fell. The record evidence also lends support to 247 Maintenance's contention that it lacked responsibility for the accident if a melt and re-freeze occurred. Amtrak employees confirmed through deposition testimony that 247 Maintenance would not have been able to re-enter the Sunnyside facility without a specific invitation from Amtrak. *See, e.g.*, Dkt. No. 115-6 at 35:2–6. Mr. Farina, the owner of 247 Maintenance, testified that he did not recall receiving a phone call from Amtrak on the night of the incident to perform further snow removal services. *See* Dkt. No. 121 ¶ 34. Thus, if a jury determines that a melt and re-freeze occurred, it could reasonably find that Amtrak, and not 247 Maintenance, bears responsibility for the accident by failing to call back 247 Maintenance to address the changed weather conditions.

These types of competing inferences are classic jury questions that cannot be resolved on summary judgment. Because "there is a genuine dispute about a material fact such that a reasonable fact-finder could return a verdict in favor of the nonmoving

party, summary judgment must be denied." *Da Silva v. Time Inc.*, 908 F. Supp. 184, 186 (S.D.N.Y. 1995). Accordingly, both Amtrak and 247 Maintenance's motions for summary judgment on Amtrak's breach of contract claim as to indemnification must be denied.

Amtrak argues that whether it played a role in the accident is irrelevant because the indemnification clause includes actions arising out of Amtrak's own negligence. *See* Dkt. No. 116 at 12 (stating that the indemnification clause required 247 Maintenance to indemnify Amtrak "irrespective of any negligence or fault on the part of" Amtrak). The plain text of the indemnification clause does not support this argument. The section that reference negligence states "Contractor agrees to defend, indemnify and hold harmless the Indemnified Parties, irrespective of any negligence or fault on the part of the Indemnified Parties, from and against any Claims which any of the Indemnified Parties may hereafter incur, be responsible for or pay *as a result of injuries (including death) to any employee of Contractor or Contractor Agents*." Dkt. No. 115-11 at 6 (emphasis added). The text of the provision is clear that it applies only to injuries of the Contractor's employees. Plaintiff was an Amtrak employee and not "an employee of [the] Contractor or Contractor Agents." *See* Dkt. No. 1 ¶ 15. Accordingly, the provision Amtrak cites does not apply to this case.

Finally, Amtrak's claim for common law indemnification fails for the same reason as its claim for breach of the contractual indemnification provision. "To be entitled to common-law indemnification, a party must show (1) that it has been held vicariously liable without proof of any negligence or actual supervision on its part; and (2) that the proposed indemnitor was either negligent or exercised actual supervision or

15

control over the injury-producing work." *Chacko v. Costco Wholesale Corp.*, 568 F. Supp. 3d 487, 497 (S.D.N.Y. 2021) (quoting *Naughton v. City of New York*, 94 A.D.3d 1, 10, 940 N.Y.S.2d 21 (1st Dep't 2012)). As discussed above, there is a genuine dispute of material fact over whether 247 Maintenance acted negligently in connection with Plaintiff's injuries and whether it exercised control over the work that caused Plaintiff's injuries. Amtrak's motion for summary judgment on its common law negligence claim must therefore be denied.

### E. Summary Judgment is Granted on Amtrak's Breach of Contract Claim for Failing to Name Amtrak as an Additional Insured

Amtrak also alleges that 247 Maintenance breached the December 2020 Purchase Order—and the Conditions of Purchase incorporated by reference—by failing to name Amtrak as an insured party in its insurance agreement. *See* Dkt. No. 116 at 13; Dkt. No. 52 ¶¶ 56–57. In support of that argument, Amtrak cites to a provision in the Conditions of Purchase that required 247 Maintenance to obtain an insurance policy that named Amtrak as additional insured. *See* Dkt. No. 127-11 at 7 ("Contractor shall include 'National Railroad Passenger Corporation, its officers, directors, employees, agents, servants, successors, assigns and subsidiaries' as additional insured(s) on all insurance policies with the exception of Workers' Compensation/Employer's Liability Insurance and Property Insurance."). It is undisputed that State Farm informed Amtrak that 247 Maintenance did not name Amtrak or qualify Amtrak as an additional insured on its insurance contract for the relevant time period. *See* Dkt. No. 115-20 at 1. Nor does 247 Maintenance allege that it had a separate insurance policy that named Amtrak. The Court has already determined that the Conditions of Purchase were incorporated into the December 2020 Purchase Order. As a result, the requirement in the Conditions of Purchase that the contractor obtain an insurance policy naming Amtrak as an additional insured

16

applied to 247 Maintenance. Because the evidentiary record in this case demonstrates clearly that 247 Maintenance did not name Amtrak on its State Farm Insurance policy, there is no dispute that 247 Maintenance breached that provision. Summary judgement is therefore GRANTED in Amtrak's favor on its breach of contract claim for failing to name Amtrak as an additional insured.

### III.   365 MAINTENANCE'S MOTION FOR SUMMARY JUDGMENT IS GRANTED

365 Maintenance is not a party to the December 2020 Purchase Order. Thus, Amtrak's claims against 365 Maintenance are premised on an allegation that it is an "alter ego" of 247 Maintenance such that the corporate veil should be pierced to hold 365 Maintenance liable for any breach of the Purchase Order. *See* Dkt No. 128 at 6. 365 Maintenance argues that it cannot be subject to liability in this case because it did not have a contract with Amtrak at the time of the accident and did not provide snow removal services for Amtrak in 2021. *See* Dkt. No. 114-1 at 4–6. Because Amtrak has not pled allegations sufficient, even if true, to require the Court to pierce the corporate veil, the Court finds that summary judgment should be granted in 365 Maintenance's favor.

The parties do not dispute that the December 2020 Purchase Order was issued to 247 Maintenance. *See* Dkt. No. 112-14 at 9; Dkt. No. 116 at 7; Dkt. No. 132 at 6. However, under both New York and D.C. law, a non-signatory to a contract can still be liable for a breach of contract by piercing the corporate veil. *See Javier v. Beck*, No. 13-CV-02926, 2014 WL 3058456, at *9 (S.D.N.Y. July 3, 2014); *Reinhardt v. Guidehouse Inc.*, No. CV 22-1237 (CKK), 2025 WL 2603688, at *10 (D.D.C. Sept. 9, 2025). To pierce the corporate veil under New York and District of Columbia law, a party must establish substantially the same elements: that "(1) the alleged alter ego exercised complete domination over the corporation with respect to the

17

transaction at issue; and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the corporate veil." *Sentry Ins. v. Brand Mgmt. Inc.*, 120 F. Supp. 3d 277, 286 (E.D.N.Y. 2015), *aff'd sub nom. Sentry Ins. a Mut. Co. v. Weber*, 720 F. App'x 639 (2d Cir. 2017); *see also McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 8 (D.D.C. 2009) (articulating a similar standard). Additionally, both jurisdictions permit veil piercing for equitable reasons. *See id.*; *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, 714 F. Supp. 3d 416, 439 (S.D.N.Y. 2024), *aff'd*, No. 24-423-CV, 2025 WL 289499 (2d Cir. Jan. 24, 2025).[7]

Here, Amtrak does not point to any instances of alleged fraud or wrongdoing that would justify piercing the corporate veil. Rather, Amtrak argues that "allowing 247 Maintenance and 365 Maintenance to hide behind their corporate forms to avoid or limit their liability for their negligence would undoubtedly lead to an inequitable result." *See* Dkt. No. 116 at 9. The Court disagrees. The record evidence demonstrates that 247 Maintenance has sufficient insurance to cover any liability in this case. *See* Dkt. No. 132 at 5; Dkt. No. 132-2 at 2 (demonstrating that 247 Maintenance has a million-dollar insurance policy in place at the time of the accident for business liability); Dkt. No. 116 at 1 (stating that the settlement payment to Plaintiff was $435,000). Thus, if a jury were to find that the accident fell within the scope of the

---

[7] The parties dispute whether New York or D.C. law applies to this claim. *See* Dkt. No. 116 at 10; Dkt. No. 131 at 10. In particular, Amtrak argues that D.C. law applies based on a governing law provision in the Conditions of Purchase. *See* Dkt. No. 116 at 10. The Court need not determine which law applies because the law of either jurisdiction produces the same result. *See Golasiewski v. Waste Mgmt. of Pennsylvania, Inc.*, No. 09-CV-05180 (RRM) (SMG), 2011 WL 2133788, at *4 (E.D.N.Y. May 27, 2011) ("[W]here the court has determined that the result would be the same under either jurisdiction's law, it need not decide which to apply.") (quoting *Fin. One Public Co. Ltd. v. Lehman Bros Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005).

indemnification provision, 247 Maintenance would have sufficient insurance to cover its liability. There is no need to pierce the corporate veil to achieve an equitable result. Because 365 Maintenance was not a party to the December 2020 Purchase Order and the Court finds no basis in the record to pierce the corporate veil to find that it is otherwise liable under the Purchase Order, 365 Maintenance cannot be found liable in this case. Accordingly, summary judgment in favor of 365 Maintenance is GRANTED.

## CONCLUSION

For the reasons set forth above, Amtrak's motion for summary judgment against 247 Maintenance is GRANTED on its breach of contract claim for failure to add Amtrak as an additional insured. Amtrak's motion for summary judgment against 247 Maintenance is DENIED on its breach of contract claim for failure to indemnify. 247 Maintenance's motion for summary judgment is DENIED. And 365 Maintenance's motion for summary judgment is GRANTED. The Clerk of Court is respectfully requested to terminate Dkt. Nos. 112, 113, and 114.

Dated: September 29, 2025
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge